# Hunsinger, Appellant, v. Lehigh Valley Railroad Company.

*Negligence—Railroads—Bridges—Foreman—Fall—Death.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, a foreman in defendant's employ, a verdict was properly directed for the defendant, where it appeared that deceased was in charge of repairing a bridge; that a section of boards had been removed in order that new boards might be laid, leaving a large opening; that while a horse was being driven upon the bridge, it took fright from steam from a locomotive passing thereunder and plunged into the opening striking the foreman and carrying him to the ground, whereby his death resulted; and it further appeared that the foreman was familiar with the dangers of the employment and was instructed to take such precautions as he considered necessary to minimize them.

Argued March 15, 1916. Appeal, No. 48, Jan. T., 1916, by plaintiff, from judgment of C. P. Bradford Co., Dec. T., 1911, No. 232, for defendant, on directed verdict, in case of Katherine Hunsinger v. Lehigh Valley Railroad Company. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before LITTLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court and judgment thereon. Plaintiff appealed.

*Error assigned* was in directing a verdict for defendant.

*Charles M. Culver,* with him *Rodney A. Mercur* and *David E. Kaufman,* for appellant.

*Edwin P. Young,* with him *T. S. Hickok,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, May 1, 1916:

This action was brought to recover damages for the death of plaintiff's husband, alleged to have been caused by the negligence of the defendant company. The deceased, Harry W. Hunsinger, who for about five years had been engaged by the defendant as an assistant foreman of carpenters, was fatally injured on March 6, 1911, while occupied with a gang of workmen in making repairs to a bridge extending over his employer's railroad tracks; he was in full charge of the job, having been directed by the defendant's general foreman to select from the employees of the company the men necessary to do the work, which consisted of re-laying the floor of the bridge "as quickly and as safely as possible"; Mr. Hunsinger and eight others, whom he had picked for the purpose, started on the job Saturday, April 4, 1911, working all that day and until eleven o'clock the following Monday morning, when the accident occurred; the bridge was about 90 feet long and 16 feet wide, the floor being divided into ten sections, each 18 feet long and 8 feet wide; the workmen commenced on the western end of the bridge, taking up each time one section, 18 feet long and extending half-way across the structure; the opening in each instance was guarded by a piece of timber so as to permit the passage of traffic on the other half of the bridge, 8 feet wide, which was continuously left open to the public; at the time of the accident, three of the sections had already been re-laid, and the men were engaged on the fourth, this being but one from the eastern end of the bridge; while the work was in progress, the railroad tracks underneath were in constant use, both for switching purposes and the accommodation of main-line trains. The accident was caused by the fright of a horse driven by a Dr. Higgins; as the animal came upon the bridge, from the east, it reared and made a plunge into the opening upon which Mr. Hunsinger and his men were then working; the deceased was struck, and, together with the horse and driver, precipitated to

the tracks below. The trial judge gave binding instructions for the defendant, and a verdict was rendered accordingly; subsequently judgment was entered on the verdict, and the plaintiff has appealed.

In an opinion refusing to grant a new trial, the court below states: "The manner in which the accident occurred was described by only one witness, Harry Peer, and his evidence was not comprehensive. He testified that at the time the horse approached the bridge an engine was passing underneath, and that steam and smoke in large quantities ascended through the opening, which he thought caused the fright of the horse.......Deceased and his men were not only engaged in making the repairs, but, upon occasions, when horses passing over the bridge gave evidence of fright, they discontinued working, lined up along the opening, and led horses when it became necessary.......In plaintiff's statement, it is alleged that the defendant company was guilty of negligence in the use of its tracks under the bridge while the repairs were pending, whereby smoke and steam were forced upward through the opening in the floor of the bridge, causing the fright of the horse; and, further, that the defendant failed to perform its duty in affording proper protection to the men while engaged in the employment. As we view this case, the testimony produced on the part of the plaintiff did not establish either that the defendant company failed in the performance of any duty owing to deceased, or that it was guilty of any specific act of negligence.......That the employment was dangerous is conceded, made so by the passing of trains under the bridge which obviously could not be suspended, and the passing of horses over the bridge, contemporaneously with the opening in the floor. It is undoubtedly true that this condition continued to exist during the time the repairs to the bridge were in progress until the accident occurred. This dangerous situation was known and recognized by both employer and employee, as shown by the instructions to the deceased by

the general foreman before the work was undertaken. The deceased, as assistant foreman, was given full charge of the work; he knew the hazard in which he was placed, and was empowered to select the best men amongst the employees, and any number, in order to do the work as expeditiously and safely as possible, having in mind the duty of the company, and the safety of its employees and the traveling public. Whatever was essential to be done to minimize the danger, he was not only authorized but required to do. He adopted such means of precaution as he deemed expedient, and, in view of the fact that he was in control of the work, was the only one to determine what was necessary for his own protection as well as that of the other employees.......It is quite clear that the conditions remained the same during all the time the work was in progress, and up to the time of the accident. The passing of trains under the bridge, and the passing of horses and vehicles over the bridge was continuously going on. If the danger was too great, the deceased could have employed additional means of protection within his grasp, or discontinued work until such action was taken by his superior. Therefore, we are of the opinion that the defendant performed its full duty in this case, and that plaintiff has failed to establish any negligence."

We have read the testimony, and all the material facts stated in the above excerpts from the opinion of the court below are to be found in the evidence produced by the plaintiff. Counsel for the appellant argue their case as though it had been shown that those in charge of the locomotive which emitted the smoke had negligently stationed their engine directly under the hole in the bridge, and then deliberately proceeded to make a great noise and puff out smoke, whereas, in point of fact, there is nothing in the testimony to justify such premises; on the contrary, the evidence of plaintiff's witnesses is that there was not anything unusual about the way in which the locomotive in question was being handled at

the time of the accident.   No new element of danger seems to have been introduced during the progress of the job, and the only conclusion possible is that Mr. Hunsinger had a full comprehension of the risks necessarily connected with and incidental to the work upon which he was engaged.   We agree with the court below that the plaintiff failed to prove the defendant guilty of negligence.

The assignments of error are overruled, and the judgment is affirmed.